T.C. Summary Opinion 2006-187


UNITED STATES TAX COURT


EMMANUEL M. AND BLESSING N. NWANKWO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 3981-05S, 8353-05S.    Filed December 12, 2006.


Emmanuel M. and Blessing N. Nwankwo, pro sese.

Robert Mopsick, for respondent.


GOLDBERG, Special Trial Judge:  These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petitions were filed.  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and

Procedure.  Respondent determined deficiencies in petitioners'
Federal income taxes and penalties as follows:

| Taxable Year | Deficiency | Sec. 6662(a) Penalty |
| --- | --- | --- |
| 2002 | $4,112 | $822 |
| 2003 | 8,562 | 1,712 |

After concessions,[1] the issues for decision are:

(1) Whether petitioners are entitled to claimed dependency
exemption deductions for Raphael Nwankwo and Caroline Nwankwo for
taxable year 2002.  We hold that they are with respect to
Caroline Nwankwo and are not with respect to Raphael Nwankwo.

(2) Whether petitioners are entitled to claimed Schedule C,
Profit or Loss From Business, deductions for legal and
professional fees in the amounts of $2,850 and $1,861 for taxable
years 2002 and 2003, respectively.  We hold that they are
entitled to deduct legal and professional fees of $105 for
taxable year 2002.  We hold that they are not entitled to such
deductions for taxable year 2003.

(3) Whether petitioners are entitled to claimed Schedule C
deductions for travel expenses of $3,202 and $4,102 for taxable
years 2002 and 2003, respectively.  We hold that they are not.

---

[1]In the 2003 taxable year, respondent also disallowed a
claimed dependency exemption for Raphael Nwankwo.  At trial,
petitioners conceded their error in listing Raphael Nwankwo as a
dependent in 2003, as he died in August 2002.  Accordingly, this
exemption is no longer an issue.

(4) Whether petitioners are entitled to claimed Schedule C deductions for employee benefit program expenses of $1,241 and $2,040 for taxable years 2002 and 2003, respectively. We hold that they are not.

(5) Whether petitioners are entitled to deduct Schedule C repairs and maintenance expenses in excess of $6,726 and $9,126 for taxable years 2002 and 2003, respectively. We hold that they are not.

(6) Whether petitioners are entitled to deduct Schedule C "other" expenses in excess of $15,337 and $15,108 for taxable years 2002 and 2003, respectively. We hold that they are not.

(7) Whether petitioners are entitled to claimed Schedule C deductions for commissions and fees expenses in the amount of $3,001 for taxable year 2002. We hold that they are not.

(8) Whether petitioners are liable for accuracy-related penalties under section 6662(a) of $882.40 and $1,712.40 for taxable years 2002 and 2003, respectively. We hold that they are.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. At the time the respective petitions were filed, petitioners resided in Somerset, New Jersey.

In 1998, petitioner husband (Mr. Nwankwo) started his own small trucking business by purchasing an 18-wheeler Mack truck. Mr. Nwankwo, who was self-employed, operated his business by contracting his services to other large trucking companies. During the taxable years at issue, Mr. Nwankwo contracted with at least three different trucking companies, picking up and delivering loads in Pennsylvania, Delaware, Connecticut, New York, and New Jersey. His work frequently had him on the road at least 3 days a week, often with overnight stays away from home. Petitioner wife worked for Sommerset Community Action Program, a social services agency, on a part-time basis in 2002, and then on a full-time basis in 2003. Petitioners have four minor children at home.

In 1998 and 1999, respectively, Mr. Nwankwo's parents, Raphael and Caroline Nwankwo, arrived from Nigeria to live with petitioners. Neither Raphael nor Caroline Nwankwo worked outside of the home. In late January 2002, Raphael Nwankwo returned to Nigeria where he immediately fell ill. Between February and August of 2002, petitioners sent the elder Mr. Nwankwo approximately $1,450 to cover his medical and incidental expenses, and paid approximately $700 for his travel expenses. During this time, Raphael Nwankwo sporadically received a state pension from the Nigerian Government of approximately $60 a month. This pension, and petitioners' support, constituted 100

percent of Raphael Nwankwo's income when he returned to Nigeria. Raphael Nwankwo died in August 2002.

Caroline Nwankwo resided with petitioners throughout 2002. In early 2003, she left petitioners' home to live with distant relatives near Baltimore, Maryland.

For each of the taxable years 2002 and 2003, petitioners included with their Federal income tax return a Schedule C, Profit or Loss From Business, related to Mr. Nwankwo's trucking business.

Taxable Year 2002

The income and expenses of Mr. Nwankwo's trucking business for taxable year 2002 were reported as follows:

| Income | $61,723 |
|---|---|
| Expenses: | |
| Commissions & fees | 3,001 |
| Depreciation | 1,775 |
| Employee benefit programs | 1,241 |
| Insurance | 4,100 |
| Legal & professional | 2,850 |
| Repairs & maintenance | 11,210 |
| Taxes & licenses | 2,906 |
| Travel | 3,202 |
| Other expenses*[2] | 20,785 |
| Profit | 10,653 |
| *Consisted of: | |
| Tolls and parking | 5,115 |
| Uniforms and cleaning | 2,713 |

_____

[2]Respondent disallowed deductions for Mr. Nwankwo's uniforms, dry cleaning, and telephone expenses. (Of these expenses, respondent allowed petitioners' fuel costs, which were, notably, identical to the amount claimed in taxable year 2003.)

|                  |        |
|------------------|--------|
| Telephone        | 2,735  |
| Fuel             | 10,222 |

In the notice of deficiency for taxable year 2002, respondent disallowed deductions for: all legal and professional fees; all travel expenses; all employee benefit programs expenses; and all commissions and fees.  Respondent also disallowed $4,484 of the $11,210 deducted for repairs and maintenance expenses, and $5,448 of the $20,785 deducted for other expenses.

In addition to the disallowed Schedule C business expense deductions, respondent disallowed dependency exemptions claimed for both Raphael and Caroline Nwankwo.

Taxable Year 2003

For taxable year 2003, petitioners reported the following income and expenses related to Mr. Nwankwo's trucking business on their Schedule C:

| Income:                     | $80,633 |
|-----------------------------|---------|
| Expenses:                   |         |
| Depreciation                | 1,238   |
| Employee benefit programs   | 2,040   |
| Insurance                   | 4,101   |
| Legal & professional        | 1,861   |
| Repairs & maintenance       | 15,210  |
| Taxes & licenses            | 3,412   |
| Travel                      | 4,102   |
| Other expenses*             | 37,771  |
|                             |         |
| Profit                      | 10,898  |
|                             |         |
| *Consisted of:              |         |
| Tolls and parking           | 5,115   |
| Uniforms and cleaning       | 2,853   |
| Telephone                   | 3,352   |

| | |
|---|---|
| Fuel | 24,200 |
| Lumber services | 2,251 |

In the notice of deficiency for taxable year 2003, respondent disallowed deductions for: all legal and professional fees; all travel expenses; all employee benefit programs expenses; $6,084 of the $15,210 claimed as repairs and maintenance expenses; and $22,663 of the $37,771 deducted as "other expenses."

## Discussion

In general, the Commissioner's determination as set forth in a notice of deficiency is presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace and are allowed only as specifically provided by statute. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

In pertinent part, Rule 142(a)(1) provides the general rule that "The burden of proof shall be upon the petitioner". In certain circumstances, however, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining proper tax liability, section 7491 places the burden of proof on the Commissioner. Sec. 7491(a)(1); Rule 142(a)(2). Credible evidence is "'the quality of evidence which, after critical analysis, the court would find sufficient * * * to base a decision on the issue if no contrary evidence were

submitted'". <u>Baker v. Commissioner</u>, 122 T.C. 143, 168 (2004) (quoting <u>Higbee v. Commissioner</u>, 116 T.C. 438, 442 (2001)).

In this case, petitioners have neither argued that section 7491 is applicable to shift the burden of proof to respondent nor established that they complied with the requirements of section 7491(a)(2)(A). The resolution of the issues presented, however, does not depend on which party has the burden of proof. Accordingly, we resolve the issues on the preponderance of the evidence in the record.

<u>2002 Dependency Exemptions</u>

Petitioners argued their entitlement to dependency exemptions for taxable year 2002 for Raphael and Caroline Nwankwo. Petitioners testified that Raphael Nwankwo lived in their home from 1998 through the end of January 2002, and that Caroline Nwankwo lived in their home from 1999 until January 2003.

Section 151(c) allows as a deduction a dependency exemption for each dependent as defined in section 152. To prevail, the taxpayer must show: (1) That the individual claimed as a dependent is a qualified relative of the taxpayer or is an individual within the meaning of section 152(a)(9); (2) that the taxpayer furnished over half of the individual's total support for the year; and (3) that the individual is a United States citizen or national for whom a taxpayer identification number

(TIN) has been included on the return reporting the exemption.
Secs. 152(a) and (b)(3), 151(e).

Section 152(a)(4) defines a dependent as including the parent of the taxpayer over half of whose support for the year was received from the taxpayer. Support generally includes amounts used for food, shelter, clothing, medical and dental care, education, and the like. Sec. 1.152-1(a)(2)(i), Income Tax Regs. To meet the support test under section 152(a), a taxpayer must show: (1) The total amounts received by the claimed dependent from all sources; (2) the amounts actually applied for the support of the dependent; (3) the sources which contributed to the total support costs expended on behalf of the dependent; and (4) that the taxpayer provided over half of the total expenditures for the dependent's support. Turecamo v. Commissioner, 554 F.2d 564 (2d Cir. 1977), affg. 64 T.C. 720 (1975); Archer v. Commissioner, 73 T.C. 963 (1980); Seraydar v. Commissioner, 50 T.C. 756, 760 (1968).

The evidence necessary to prove total support must be convincing. Seraydar v. Commissioner, supra at 760; Stafford v. Commissioner, 46 T.C. 515, 517 (1966). If the amount of total support is not shown and cannot be reasonably inferred from the competent evidence available, then it is impossible to conclude that the taxpayer furnished more than half. Blanco v.

Commissioner, 56 T.C. 512, 514-515 (1971); Stafford v.
Commissioner, supra at 518.

With respect to the elder Mrs. Nwankwo, petitioners provided
credible evidence that Caroline Nwankwo remained in their home
throughout all of 2002, that she did not work outside their home,
and that they provided all of her support by way of food,
clothing, shelter, and medical care. We are satisfied,
therefore, that petitioners provided more than half of the elder
Mrs. Nwankwo's support in taxable year 2002.

With respect to Raphael Nwankwo, petitioners provided
credible evidence that although the elder Mr. Nwankwo left their
home in late January 2002, they contributed more than half of his
total financial support for the taxable year. Petitioners
offered credible testimony that between January and August 2002,
they provided Mr. Nwankwo with $1,450 in support for food,
clothing, and medical care. In addition, petitioners also paid
approximately $700 for travel-related expenses. When he returned
to Nigeria in late January 2002, the elder Mr. Nwankwo received a
state pension of $60 a month. This was his only source of income
in Nigeria. During this time, petitioners remained the primary
source of Raphael Nwankwo's economic support, often sending cash
to him in Nigeria. He died in August 2002.

However, while we are satisfied that petitioners provided
more than half the support for both Raphael and Caroline Nwankwo

in 2002, in order to decide this issue, we must resolve the residency requirement of section 151(e); that is, we must consider whether either of the claimed individuals could be classified as a U.S. citizen or national in 2002.

Under section 152(b)(3), an individual who is not a citizen or national of the United States is excluded from the definition of the term "dependent" unless the individual is a resident of the United States.  Section 1.871-2, Income Tax Regs., contains guidelines for determining if a noncitizen is a resident within the meaning of section 152(b)(3).  See DeLauzirika v. Commissioner, T.C. Memo. 1971-181.

Section 1.871-2(b), Income Tax Regs., defines "residence" as:

>      (b) Residence defined.  An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax.  Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient.  If he lives in the United States and has no definite intention as to his stay, he is a resident.  One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned.  An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.

Section 1.871-4, Income Tax Regs., sets forth the rules of evidence that further govern the determination of an alien's residence:

Sec. 1.871-4.  Proof of residence of aliens.

(a) Rules of evidence.  The following rules of evidence shall govern in determining whether or not an alien within the United States has acquired residence therein for purposes of the income tax.

(b) Nonresidence presumed.  An alien, by reason of his alienage, is presumed to be a nonresident alien.

(c) Presumption rebutted.  * * *.

(2) Other aliens.  In the case of other aliens, the presumption as to the alien's nonresidence may be overcome by proof--

(i) That the alien has filed a declaration of his intention to become a citizen of the United States under the naturalization laws; or

(ii) That the alien has filed Form 1078 or its equivalent; or

(iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident.

First, although it is unclear from the record before us whether the elder Nwankwos filed a declaration of their intentions or Forms 1078, Certificate of Alian Claiming Residence in the United States, we are satisfied that the elder Mrs. Nwankwo, through both deed and word, desired to remain permanently in the United States.  Petitioners testified that Caroline Nwankwo spoke of her desire never to return to Nigeria,

and that she wished to remain close to her children and grandchildren.  Accordingly, under section 1.871-4(c)(2)(i) and (ii), Income Tax Regs., we find her words and actions sufficient as to constitute her a resident for taxable year 2002.  Having considered the facts before us and after giving due consideration to the presumption as set forth in the regulations, we conclude that Caroline Nwankwo was a resident of the United States in taxable year 2002, and that petitioners are entitled, therefore, to a dependency exemption for her.

In contrast, the record indicates that the elder Mr. Nwankwo was adamant in both deed and word that his stay in the United States was temporary.  Petitioners testified that he often told them of his desire to return to Nigeria, that he regretted leaving behind his other son and family, with whom he wished to be reunited, and that he did not want petitioners to purchase him a round trip ticket upon his return to Nigeria in January 2002. Petitioners also testified that the elder Mr. Nwankwo was dissatisfied from the time that he first came to the United States in 1998, and that he often told them of his distaste for the cold New Jersey winters and the high cost of public transportation.  In fact, petitioners testified that were it not for the presence of the elder Mrs. Nwankwo, and the costs associated with a return to Nigeria, the elder Mr. Nwankwo would have returned to Nigeria.  Finally, Raphael Nwankwo returned to

Nigeria in January of 2002 with the intention of never returning to the United States. See sec. 1.871-5, Income Tax Regs.

With respect to Raphael Nwankwo, we conclude that he never intended to become a U.S. citizen and that he abandoned any resident status that he may have otherwise attained in the 3 years prior to his departure. Accordingly, irrespective of our finding that petitioners did provide more than half of his total support in 2002, we must sustain respondent on this issue.

2002 Schedule C Expenses

As stated in the notice of deficiency for 2002, respondent disallowed part of petitioners' claimed Schedule C expense deductions because petitioners failed to "keep adequate records and documentary evidence to substantiate" these expenses. Despite their lack of substantiation, respondent afforded "consideration" for petitioners' depreciation, and repairs and insurance expenses, allowing petitioners 60 percent of their claim. Respondent, however, disallowed some of petitioners' deductions for legal and professional fees, travel expenses, employee benefit program expenses, repair and maintenance expenses,"other expenses", including uniforms and dry cleaning and telephone, and commissions and fees for "lack of adequate records and documentary evidence."

Section 162 allows "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in

carrying on any trade or business".  Sec. 162(a); <u>Deputy v. duPont</u>, 308 U.S. 488, 495 (1940).

Respondent did not challenge the validity of petitioners' claimed Schedule C expenses as ordinary and necessary expenses paid or incurred for Mr. Nwankwo's trucking business but rather disallowed the expenses on the grounds that petitioners failed to provide substantiation that these expenses were actually paid or incurred in the taxable years, and in the amounts, that they were claimed.

With respect to the legal and professional fees, the record contains evidence of two citations incurred by Mr. Nwankwo in 2002 as shown on payroll deduction forms provided by his employer.  The amounts of these citations were $105 and $1,105, respectively.  However, upon closer scrutiny of this evidence, we find only one of the photocopied receipts provided by petitioner to be legitimate,[3] and accordingly, conclude that petitioner is entitled to a deduction of $105.  Petitioner then testified that he incurred attorney's fees of $400 associated with this

---

[3]The two photocopies provided are identical insofar as they have the same claim accident number, date, and location information.  They appear to have been written by the same person.  There are two marked differences between the documents: the document listing an amount of $105 appears to be a photocopy, whereas the document showing $1,105 appears, at least on first blush, to be an original.  However, upon closer inspection, we find that an extra "1" was likely added to the $105 copy and then re-copied, whereupon the "original" $105 copy was either distressed or re-faxed to give the appearance of two separate receipts.

citation; however, the record is devoid of any proof that he actually incurred this expense.  Accordingly, we find petitioner is entitled to deduct a Schedule C expense for legal and professional fees only to the extent of $105.

On their 2002 Schedule C, petitioners deducted travel expenses of $3,202.  With respect to travel expenses and certain other expenses, including property used as a means of transportation, section 274(d) imposes stringent substantiation requirements to document with particularity the nature and amount of such expenses.  For such expenses, substantiation of the amounts claimed by adequate records or by other sufficient evidence corroborating the expenses is required.  Sec. 274(d); sec. 1.274-5T(a)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  To meet the adequate records requirements of section 274(d), a taxpayer "shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure".  Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  These substantiation requirements are designed to encourage taxpayers to maintain records, together with documentary evidence substantiating each element of the expense sought to be deducted.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Mr. Nwankwo's records with respect to his travel expenses do not satisfy the requirements of section 274(d) and the regulations thereunder. Petitioner testified at trial that he did not keep a log book or any travel records for 2002 and that, in fact, he did not begin keeping a log book for his travel expenses until very recently. Although Mr. Nwankwo testified that he no longer had receipts from 2002, he also stated that many of his travel expenses were charged to his personal credit card. However, petitioners provided no credit card statements (that could have easily been reproduced by contacting their credit card company) as evidence. We are therefore unpersuaded that Mr. Nwankwo incurred the costs he purports in taxable year 2002 and, accordingly, sustain respondent with respect to this issue.

With respect to the employee benefit programs expenses, the record is devoid of any evidence showing that petitioners incurred such costs. Accordingly, we must sustain respondent with respect to this issue.

With respect to the disallowed deductions for repair and maintenance expenses, Mr. Nwankwo testified at trial that he presented "a bag of receipts" to the agent during the examination of their 2002 return, but that the agent refused to look at them. Petitioners did not recall the dollar amount or number of the receipts contained in the bag, they did not reproduce these

receipts, and they did not testify that the receipts in question were no longer available. Rather, petitioners maintained that the agent simply and flatly refused to consider any of the receipts they brought with them to the examination. Petitioners then produced at trial photocopies of approximately 25 receipts (some from automotive shops, some from taxable year 2003 and later, and others, unreadable) that they claimed were reflective of the receipts contained in the bag presented at the examination. These documents were received into evidence.

We cannot tell from the record whether any of the photocopied receipts for taxable year 2002 as provided by petitioners were a part of the amounts disallowed by respondent. Irrespective, we are ultimately unpersuaded that the agent at examination flatly refused to look at any of the documentation petitioners purportedly provided to her. Moreover, we note that respondent disallowed the amounts claimed by petitioners based on a lack of supporting documentation "as of 8-12-04." Petitioners concede that they were not in possession of any of their receipts from 2002 on August 12, 2004. We must therefore conclude that petitioners have failed to establish that these expenses were, in fact, paid or incurred in the course of Mr. Nwankwo's trucking business in 2002.

With respect to the disallowed deductions for uniforms and cleaning expenses, Mr. Nwankwo testified that the uniforms and

cleaning costs resulted from his work uniform, and although he did not wear a corporate uniform per se, he did wear "jeans from head to toe." Articles of clothing are deductible under section 162(a) only if the clothing is required in the taxpayer's business, is not suitable for general or personal wear, and is not worn for general or personal purposes. Yeomans v. Commissioner, 30 T.C. 757, 767-768 (1958). There is nothing in the record to prove that the jeans worn by Mr. Nwankwo were required in petitioner's business, were not suitable for general or personal wear, and were not worn for general or personal purposes. Accordingly, we must sustain respondent with respect to these expenses.

With respect to the disallowed deductions for telephone expenses, as a general rule, the deductibility of telephone expenses is also guided by section 162(a). But see sec. 262(b). However, if the telephone expense at issue is for a cellular phone, the stringent substantiation requirements under section 274(d) will apply, as a cellular phone is listed property pursuant to sections 274(d)(4) and 280F(d)(4)(A)(iv).

The record is devoid of any evidence showing Mr. Nwankwo's business-related telephone expenses, or in what amount these expenses occurred. The only reference contained in the record is a letter addressed to Mr. Nwankwo from his cellular phone company notifying him of a replacement fee that he must pay for a non-

working phone.  This letter is dated August 17, 2004.  Based upon the lack of substantiation as to deduction, we must sustain the determination with respect to the telephone expenses.

With respect to the commissions and fees expenses, petitioners testified at trial that this deduction was due to an error made by their C.P.A.  Accordingly, with no evidence in the record to the contrary, we sustain respondent's determination on this issue.

2003 Schedule C Expenses

As stated in the 2003 notice of deficiency, respondent disallowed petitioners' claimed Schedule C deductions for employee benefits programs and legal and professional services expenses because they failed to establish that the "expenses shown on [their] tax return were paid or incurred during the taxable year and that the expenses were ordinary and necessary to your business."  Respondent disallowed petitioners' claimed deductions for repairs, travel, and other expenses because they "did not substantiate these reported expenses."

As previously stated, section 162 allows "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Sec. 162(a); Deputy v. duPont, 308 U.S. at 495.

With respect to the legal and professional fees, Mr. Nwankwo testified that these costs stemmed from citations that he

received while driving his 18-wheeler in 2003.  However, he failed to provide respondent, either at the examination, or before or at trial, with proof of these expenses.  He did not offer any testimony at trial of these costs.  Accordingly, we must sustain respondent's determination as to this issue.

With respect to petitioners' claimed deductions for travel expenses, as previously discussed, section 274(d) imposes stringent substantiation requirements to document with particularity the nature and amount of such expenses.  Mr. Nwankwo testified that these receipts were also kept in the bag that was mistakenly thrown out in the trash by his mother.  Mr. Nwankwo testified that he did not keep a travel log for that year, and the record is devoid of any additional evidence that could prove his travel expenses.  Although Mr. Nwankwo testified that he often used credit cards to pay his travel-related expenses in 2003, he did not produce any records from his credit card companies to this effect.  Accordingly, we must sustain respondent on this issue.

With respect to the employee benefit programs expenses, the record is devoid of any evidence showing that petitioners incurred such costs.  Accordingly, we must sustain respondent with respect to this issue.

With respect to the disallowed repair and maintenance expenses, Mr. Nwankwo testified that the bulk of the receipts for

these items were contained in a "bag of receipts" mistakenly thrown out in the trash by his mother, the elder Mrs. Nwankwo, sometime in late 2003 when she was staying at petitioners' home. Petitioners did not recall a total dollar amount for the receipts contained in the bag, nor did they testify that the receipts in question were no longer available. Petitioners produced at trial photocopies of approximately 15 readable receipts that they claimed were reflective of the receipts contained in the bag that was thrown out in the trash. These receipts were received into evidence.

Again, we cannot tell from the record whether any of the photocopied receipts provided by petitioners were a part of the amounts disallowed by respondent. We must therefore sustain respondent on this issue.

With respect to the disallowed deductions for uniforms and dry cleaning expenses, we again find that there is nothing in the record to prove that the "jeans uniform" worn by Mr. Nwankwo in 2003 was required in petitioner's business, was not suitable for general or personal wear, and was not worn for general or personal purposes. Moreover, as a general observations, we are unwilling to believe that blue jeans of the type Mr. Nwankwo testified that he wore while on the job required dry cleaning. Accordingly, we sustain respondent with respect to this deduction.

With respect to the disallowed telephone expenses, the record is devoid of any evidence showing that Mr. Nwankwo had telephone expenses in 2003, and for reasons previously discussed, we must again sustain respondent's determination with respect to this issue.

Finally, respondent disallowed petitioners' Schedule C "other expenses" deduction for "lumber services" of $2,251. Mr. Nwankwo testified that "lumber services" was an expense that he would incur if, upon arrival to his offloading destination, he found himself either too tired or too time pressured to offload his rig himself. He would often find "street people" at his destination to offload his rig for him, pay them approximately $200 in cash, and obtain their signature on a slip of scrap paper as proof of this expense.

Respondent argues that these expenses were not ordinary and necessary to Mr. Nwankwo's business within the meaning of section 162. However, the term "necessary" imposes only the minimal requirement that the expense be "appropriate and helpful" for "the development of the * * * [taxpayer's] business." Welch v. Helvering, 290 U.S. at 113; Lilly v. Commissioner, 343 U.S. 90, 93-94 (1952); Commissioner v. Heininger, 320 U.S. 467, 471 (1943); cf. Kornhauser v. United States, 276 U.S. 145, 152 (1928); McCulloch v. Maryland, 17 U.S. 316, 413-415 (1819).

Accordingly, we conclude that "lumber services" were, in fact, within the scope of section 162(a), as helpful to the development of Mr. Nwankwo's business insomuch as they enabled him to save time and make a greater number of deliveries. If the record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of such expense and allow the deduction to that extent. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Green v. Commissioner, T.C. Memo. 1989-599.

In this case, however, although we find Mr. Nwankwo's testimony credible to the fact that he did incur these expenses on certain occasions, we must recognize that he provided neither a total dollar amount nor the actual slips that he received from these laborers, nor any other testimony upon which we could base a Cohan estimation. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Accordingly, for lack of basic evidence, we must sustain respondent's determination with respect to these expenses.

Section 6662(a) Penalty

As previously stated, respondent, in the notices of deficiency, determined that petitioners are liable for accuracy-

related penalties pursuant to section 6662(a) for taxable years 2002 and 2003.

Section 6662(a) provides for an accuracy-related penalty of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations. Sec. 6662(b)(1). Negligence means a "'failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299). Negligence also includes the failure by the taxpayer to keep adequate books and records. Sec. 1.6662-3(b)(1), Income Tax Regs. No accuracy-related penalty may be imposed on any portion of an underpayment if it is shown that there was "reasonable cause" for such portion and that the taxpayer acted in "good faith" with respect to such portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b), Income Tax Regs. The most important factor is the extent of the taxpayer's efforts to determine his or her proper tax liability. Id.

The Commissioner bears the burden of production with respect to all penalties. See sec. 7491(c). The burden imposed by section 7491(c), however, is merely for the Commissioner to come forward with evidence regarding the appropriateness of applying a particular addition to tax or penalty to the taxpayer. The Commissioner need not negate all defenses to the additions or penalties. See Higbee v.Commissioner, 116 T.C. 438, 446 (2001). Respondent has met his burden with respect to the negligence claim by establishing that petitioners failed to maintain adequate and accurate accounts of their expenses in taxable years 2002 and 2003. Moreover, petitioners have not shown that there was reasonable cause for their failures to maintain such records. Therefore, we sustain respondent's determination of the penalties under section 6662(a) for taxable years 2002 and 2003.

To the extent that we have not addressed any of the parties' arguments, we have considered them and conclude they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decisions will be entered under Rule 155.